IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRISTOPHER GEORGE KNOX                                            PLAINTIFF

        v.                            Civil No.   15-5035

DEPUTY MIKE LIVERMORE                                             DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

        This is a civil rights case filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff

proceeds *pro se* and *in forma pauperis.*

        Plaintiff is incarcerated in the Washington County Detention Center (WCDC).  Plaintiff

maintains his constitutional rights were violated during a shakedown on January 25, 2015.

Specifically, he maintains the Defendant illegally searched and destroyed his legal material.

        Plaintiff sued the Defendant in both his individual and official capacities.  During his

deposition, Plaintiff indicated he was no longer pursuing an official capacity case.  Plaintiff

reiterated this at the beginning of the hearing.  However, during the hearing, Plaintiff testified that

it was detention center policy to allow staff to search legal materials including envelopes for

contraband, when the inmates were not present.  Given this testimony, the official capacity claim

was left in the case.

        Pending before the Court are two motions for summary judgment.  The first motion (Doc.

36) was filed by the Plaintiff on September 14, 2015.  The second motion (Doc. 41) was filed by

the Defendant on November 23, 2015.  In addition to the written materials, a summary judgment

hearing was held on January 6, 2016, to allow the Plaintiff to testify in response to the Defendant's

summary judgment motion.  At the conclusion of the hearing, Defendant was asked to provide: (1)

his own affidavit; (2) a copy of the jail policy regarding the search of legal materials outside the

presence of the inmate once the mail was in the cell area; and (3) if it was the jail's position that

-1-

inmates' legal material could be searched for contraband once in the cell area, a brief was to be submitted addressing legal authorities supporting this position.

The additional materials (Docs. 51, 53, 54, & 55) have been filed. The materials include affidavits of Major Randall Denzer, supervisor over operations, the Defendant, and Corporal Tom Mulvaney. (Docs. 55-1-3). The motions are now ready for decision.

## 1. Background

Plaintiff testified that in December of 2015, he filed a civil rights case against Washington County and Southern Health Partners, *Knox v. Bradley, et al.,* Civil No. 15-5006 (opened January 7, 2015). In connection with that case, Plaintiff had been keeping a log noting the time his blood pressure was taken, the names of the officers he talked to about medical issues, the dates he filed grievances, and the disposition of any medical complaints. Plaintiff kept his log inside a blank legal envelope marked "notes" which in turn was in a manilla envelope bearing the Court's return address. The manilla envelope also contained copies of documents he filed with the court. Plaintiff kept his legal materials underneath his bunk in a metal box.

A shakedown was conducted on January 25, 2015. Shakedowns are conducted in response to an officer's belief that there is contraband present and also on a routine systematic basis. *Deft's Ex.* A-2 at 10. During a shakedown, inmates are removed from the area for officer safety. *Deft's Ex.* D (Doc. 55-1) at ¶ 5. Everything in the cell is searched for contraband. *Id.* If an officer locates what he believes is trash or hoarded items, the items are thrown on the floor or into a trash receptacle. *Deft's Ex.* D at ¶ 5. Legal envelopes are distributed for outgoing legal mail on an as needed basis. *Id.* at ¶ 9. Inmates are not allowed to store multiple legal envelopes. *Id.* at ¶ 10. "Multiple open, unaddressed, legal envelopes would be considered contraband under the Detention Center policies and would be seized." *Id.*; *Deft's Ex.* E (Doc. 55-2) at ¶ 7.

-2-

Contraband may be hidden, among other places, in open envelopes, whether plain or legal, and documents in an inmate's possession. *Def't's Ex.* D at ¶ 11; *Def't's Ex.* E (Doc. 55-2) at ¶ 4. All open envelopes and stacks of documents are searched. *Def't's Ex.* D at ¶ 11. During a shakedown, if open legal mail is found, it is searched for contraband. *Id.* at ¶ 12. The mail is not read. *Id.; Def't's Ex.* E at ¶ 5.

Defendant recalled that while searching, he dumped some manilla envelopes to look for razors or other contraband. *Def't's Ex.* E at ¶ 8. He indicated he threw "other blank envelopes away that appeared to be excess envelopes being hoarded." *Id.* Defendant could not recall seeing an envelope with "notes" written on the outside of it. *Id.* He "did not realize that any of the envelopes [he] threw away had anything in them." *Id.* Further, Defendant stated that at the time of the shakedown, he did not know Plaintiff had filed a case in federal court. *Id.* at ¶ 9.

Plaintiff testified that after the shakedown, he began to go through his belongings and put his bunk back together. Plaintiff did not initially realize his log was missing out of his legal mail. He then realized his log consisting of two pages, front and back, of personal notes was missing, as were four blank envelopes. The log had been in one of the blank envelopes. The envelope was not sealed.

The notes were not meant to be filed with the Court. The outside of the envelope was marked legal mail and he labeled it "notes" in an attempt to be organized. He referred to the document as his "case file." Plaintiff testified that he intended to use the notes to obtain and preserve evidence and to determine necessary witnesses.

The blank envelopes were provided by the detention center to send legal mail. Plaintiff testified that he used the kiosk and when he went to make a note of that on the log, he noticed the envelope with the log in it was gone. All his blank non-addressed envelopes were gone.

-3-

Plaintiff testified that he did not know if the Defendant was aware that Plaintiff had notes in one of the blank envelopes. Plaintiff conceded that it was possible Defendant believed the envelope was empty like the other three.

Plaintiff testified that they were not allowed to keep extra materials in their bunk area. Anything in excess of the specified allowed amount was considered contraband. *See Deft's Ex. A-2 at 14.* Plaintiff testified it was possible Defendant believed the extra envelopes were contraband.

Plaintiff pushed the intercom to let detention center staff know that legal material that he needed had been discarded. He also submitted grievances about the issue. *Plaintiff's Exhibit* A (Doc. 38-1) at 3-5. He stated there was no reason for anyone to go through his legal paperwork and he demanded the materials be returned. *Id.* at 3. In response, Plaintiff was told no legal paperwork was taken. *Id.* However, he did have a large number of envelopes with the words "legal mail" stamped in red on them that he should not have had. *Id.* He was told that he was to ask for a legal envelope at the time he needed one to mail something to the court. *Id.* at 4. Plaintiff testified that no one addressed the fact that there had been legal materials in one of the envelopes that were discarded.

When asked how he was prejudiced by his notes being discarded, Plaintiff testified that he was attempting to compile evidence, including video evidence, showing he was having blood pressure problems. He further testified that his notes contained blood pressure readings that were not in his medical records. Plaintiff testified that he was able to recall the individuals involved and some of the dates, and was also able to get other information from reading officers' reports, but he believed he was still missing one or two dates.

-4-

On February 3, 2015, Corporal Mulvaney reported he spoke with the Defendant about the shakedown. *Def's Ex.* A-1 at 27. Defendant stated he may have dumped some envelopes looking for contraband but he did not throw any paper away. *Id.*

When legal mail initially comes in, it is opened in the presence of the inmate. *Def's Ex.* A at ¶ 6; *Def's Ex.* A-1 at 4. Officers are instructed that an incident report must be filed when mail is read, censored, or items are removed pursuant to policy. *Def's Ex.* A at ¶ 7; *Def's Ex.* A-1 at 5.

However, the WCDC's policy is that once legal mail has been screened and is in the inmate's possession, it, as well as all the other inmate's belongings and the entire cell, may be searched without the inmate being present. *Def's Ex.* A at ¶ 7; *Def's Ex.* A-1 at 5. During such searches, privileged mail is not read. Plaintiff maintains that Defendant could not inspect his legal materials without him being present.

The Defendant submitted a video exhibit. Plaintiff's cell is located in the upper left quadrant. Defendant has been identified as the shorter of the two deputies depicted. Plaintiff's bunk is the middle bottom bunk located against the back wall. Due to the placement of the camera and its distance from the area at issue, it is difficult to see what is occurring. It appears Defendant first lifts up the Plaintiff's mat and then begins looking under the bed. It looks as if Defendant is pulling manilla envelopes and/or papers out of the box. The materials are on the floor and some were put in the trash. After the officers were done, trustees came into the pod and swept and picked up all materials on the floor.

### 2. Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the

-5-

disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. See McCleary v. ReliaStar Life Ins. Co., 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

**3. Discussion**

Defendants move for summary judgment on the following grounds: (1) there is no Fourth Amendment violation because Plaintiff had no expectation of privacy in his jail cell; (2) there is no constitutional protection for documents in a jail cell stored in an opened envelope under either the First or Sixth Amendment violation; (3) the disposal of the notes did not violate the Fifth or Fourteenth Amendment; (4) the loss of the notes did not deny Plaintiff access to the courts; and (5) Defendant is entitled to qualified immunity.

Section 1983 imposes civil liability upon one:

> who under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

AO72A
(Rev. 8/82)

42 U.S.C. § 1983.

**(A). Fourth Amendment--Illegal Search**

The Fourth Amendment protects the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. U.S. Const. amend IV. For the Fourth Amendment to be implicated, a person must have a legitimate expectation of privacy. Smith v. Maryland, 442 U.S. 735, 740 (1979). "[G]iven the realities of institutional confinement any reasonable expectation of privacy that a detainee retained necessarily would be of a diminished scope." Bell v. Wolfish, 441 U.S. 520, 557 (1979).

In Hudson v. Palmer, 468 U.S. 517, 529-30 (1984), the Supreme Court held that prisoners have no legitimate expectation of privacy in their prison cell, and thus the Fourth Amendment proscription against unreasonable searches does not apply to prison cells. Accordingly, Plaintiff has no expectation of privacy and no warrant is required for the Defendant to search Plaintiff's belongings or confiscate the same. Defendant is entitled to summary judgment on the Fourth Amendment claim.

**(B). First Amendment--Legal Mail**

"Inmates have a First Amendment right of free speech to send and receive mail. Hudson v. Palmer, 468 U.S. 517, 547 (1984). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 125 (1977).

"Prisoners' First Amendment rights encompass the right to be free from certain interference with mail correspondence." Davis v. Norris, 249 F.3d 800, 801 (8th Cir. 2001). "Interference with legal mail implicates a prison inmate's right to access to the courts and free

AO72A
(Rev. 8/82)

speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d Cir. 2003).   "A prison policy that obstructs privileged inmate mail can violate inmates' right of access to the courts." <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998).

Restrictions on this First Amendment right are valid "only if [they are] (1) reasonably related to legitimate penological interests,"such as security, order, or rehabilitation and are (2) no greater than necessary to the protection of the governmental interest involved. <u>Turner v. Safely</u>, 482 U.S. 78, 89 (1987).  In balancing the competing interests, courts afford greater protection to legal mail than non-legal mail and greater protection to outgoing mail than to incoming mail. <u>See Thornburgh v. Abbott</u>, 490 U.S. 401, 413 (1989).

Incoming legal mail "cannot be opened for inspection outside the inmate's presence." <u>Cody v. Weber</u>, 256 F.3d 764, 768 (8th Cir. 2001); <u>see also Thongvanh v. Thalacker</u>, 17 F.3d 256, 258-59 (8th Cir. 1994)(prison officials' duty to maintain security within prison does not extend to reading inmates' legal mail).  However, "an isolated, inadvertent instance of opening incoming confidential legal mail" will not support a § 1983 damage action unless there is "evidence of improper motive or resulting interference with the inmate's right to counsel or access to the courts." <u>Gardner v. Howard</u>, 109 F.3d 427, 431 (8th Cir. 1997)(citation and internal punctuation marks omitted).

> The act of opening incoming mail does not injure an inmate's right to access to the courts.  The policy that incoming confidential legal mail should be opened in inmates' presence instead serves the prophylactic purpose of assuring them that confidential attorney-client mail has not been improperly read in the guise of searching for contraband.

<u>Id.</u>

In this case, the document at issue was Plaintiff's notes and did not come into the facility as legal mail.  During the shakedown, Defendant looked into an already opened envelope that initially held legal mail from the court.  It is undisputed that the purpose of the shakedown was to seize contraband.  Defendant dumped the contents of the envelope for the purpose of inspecting it for contraband during the shakedown.  Plaintiff maintains this action and the throwing away of the four legal mail envelopes violates his First Amendment rights.

Plaintiff does not contend Defendant read his legal mail and the WCDC's policies clearly prohibit the reading of legal mail.  To read an inmate's legal mail during a routine cell search would clearly violate Plaintiff's constitutional rights.  Cf. Wolff v. McDonnell, 418 U.S. 539, 577 (1974)(opening mail in the presence of the inmate insures that prison officials will not read the mail and that censorship and confidentiality concerns would not be implicated).  See Marquez v. Miranda, No. 93-15626, 12 F.3d 1107 (table), 1993 WL 501494, *2 (9th Cir. Dec. 6, 1993)("The defendants had no reason to believe that legal mail which may not be read by prison officials when it arrives at the prison could then be routinely read during a cell search.  Far from being reasonable, such an interpretation renders *Wolff* a nullity")(citations omitted).      However, here the Plaintiff's legal mail and legal documents were not read but instead merely inspected for contraband.  Such an act does not violate the First Amendment.  See e.g., Schenck v. Edwards, 921 F. Supp. 679, 690 (E. D. Wash. 1996)("requiring the inmate's presence during a cell search takes away the element of surprise and randomness which makes searches so effective in ferreting out contraband.  According to the Supreme Court: 'Virtually the only place inmates can conceal weapons, drugs, and other contraband is in their cells.  Unfettered access to these cells by prison officials, thus is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be

-9-

maintained.'")(quoting Hudson, 468 U.S. at 527); Edwards v. Sloan, No. C 92-20168 JW, 1995

WL 325979 (N.D. Ca. May 24, 1995)(cursory search of legal mail for contraband does not violate

the constitution when the content of the mail is not read).  Defendant is entitled to summary

judgment on this First Amendment claim.

### (C).  First Amendment--Access to Courts

"Inmates undeniably enjoy a constitutional right of access to the courts and the legal

system." Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996)(citing, Lewis v. Casey, 518 U.S.

343 (1996);  Bounds v. Smith, 430 U.S. 817, 821 (1977)).   In Myers, the Eighth Circuit stated

that:

> [t]o protect that right, prisons must provide inmates with some access to legal
> materials or to legal assistance so that inmates can prepare and pursue complaints,
> and with some ability to mail these complaints and related legal correspondence
> once prepared. Inmates do not have a right, however, either to law libraries or to
> unlimited stamp allowances for legal mail.  Instead, the duty to make such
> arrangements is bounded by the inmates' right of meaningful access to the courts.
> To state a claim that a law library or legal assistance program violates this right,
> inmates must assert that they suffered an actual injury to pending or contemplated
> legal claims.  Alleging theoretical inadequacies is insufficient.  Inmates must
> instead show, for example, that a complaint that they prepared was dismissed due
> to a technical requirement that a library's inadequacies prevented them from
> knowing, or that a library was so inadequate that it prevented them from filing a
> complaint for actionable harm at all.

Myers, 101 F.3d at 544 (citations omitted).

 In Cody v. Weber, 256 F. 3d 764 (8th Cir. 2001), the Eighth Circuit noted that the

Supreme Court in Lewis, 518 U.S. 343 and Bounds, 430 U.S. 817, "determined that the right of

access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally

attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it

-10-

does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'" Cody, 256 F. 3d at 767-68 (quoting Lewis, 518 U.S. at 354-55).

Plaintiff does not indicate he missed any deadlines with the court or was prejudiced in anyway in Case No. 15-5006 by the destruction of the log.  I also note that during his incarceration at the WCDC, Plaintiff was able to file this civil rights case and file and proceed with another civil rights case.  As Plaintiff suffered no injury, this claim fails as a matter of law.  Johnson v. Hamilton, 452 F.3d 967, 973-74 (8th Cir. 2006)("To sustain his claim based on denial of access to legal materials, counsel, or the courts, [Plaintiff] must prove that he suffered an actual injury or prejudice as a result of the alleged denial of access.")(citation omitted).

Further, even if Plaintiff had suffered some injury from the destruction of the log, Plaintiff acknowledged that Defendant may have believed that the envelope he threw away, which contained the log, was empty.  Thus, Plaintiff cannot demonstrate that Defendant "acted with some intentional motivation to restrict his access to the courts," which is what is required to prevail on an access-to-the-courts claim.  Morris v. City of Chillicothe, 512 F.3d 1013, 1020-21 (8th Cir. 2008).  Defendant is, therefore, entitled to summary judgment on this claim.

**(D).  Sixth Amendment--Right to Counsel**

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  U.S. Const. amend VI.  Plaintiff has not alleged that Defendant interfered with, or prejudiced him, in a criminal proceeding.  The Sixth Amendment has no applicability to civil matters.

**(E).  Due Process--Deprivation of Property**

To the extent Plaintiff contends Defendant's failure to return  property he seized during a search violates Plaintiff's constitutional rights, this does not amount to a constitutional violation

-11-

because Plaintiff has adequate post-deprivation remedies.  See Hudson, 468 U.S. at 536 (when

state actor deprives individual of personal property, individual does not have § 1983 claim if state

law provides adequate post- deprivation remedy); Elliot v. Hurst, 307 Ark. 134, 817 S.W.2d 877,

880 (1991)(cause of action for conversion lies where distinct act of dominion is exerted over

property in denial of owner's right).  The Defendant is entitled to summary judgment on this claim.

## (F).  Official Capacity Claim

Here, Plaintiff's official capacity claim is based on the policy of the WCDC of allowing

all items, including legal materials, to be searched during a shakedown.  A Plaintiff "seeking to

impose liability on a municipality under § 1983 [must] identify a municipal policy or custom that

caused the plaintiff's injury."  Board of County Commissioners of Bryan County, Oklahoma v.

Brown, 520 U.S. 397, 403 (1997).  "There are two basic circumstances under which municipal

liability will attach: (1) where a particular municipal policy or custom itself violates federal law,

or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was

adopted with 'deliberate indifference' to its known or obvious consequences."  Moyle v. Anderson,

571 F.3d 814, 817-18 (8th Cir. 2009) (citation omitted).  Plaintiff has not pointed to "any officially

accepted guiding principle or procedure that was constitutionally inadequate."  Jenkins v. County

of Hennepin, 557 F.3d 628, 633 (8th Cir. 2009).

"[A] custom can be shown only by adducing evidence of a continuing, widespread,

persistent pattern of unconstitutional misconduct."  Id. at 634 (internal quotation marks and citation

omitted).  There is no genuine issue of material fact as to whether there is any widespread,

persistent pattern of unconstitutional conduct with respect to the shakedown procedures. There is

no evidence suggesting Defendant read any of the Plaintiff's legal materials during the shakedown.

-12-

The mere inspection of all belongings in the cell during a shakedown falls far short of suggesting the existence of an unconstitutional policy, custom, or practice.

### (G).  Qualified Immunity

Qualified immunity "is an *immunity from suit* rather than merely a defense to liability." Mitchell v. Forsyth, 472 U.S.  511, 526 (1985) (emphasis in original).  It entitles an individual to not be subject to trial or the other burdens of litigation and "is effectively lost if a case is erroneously permitted to go to trial." Id.  Accordingly, it is important that the question of qualified immunity be resolved as early as possible in the proceedings.  O'Neil v. City of Iowa City, 496 F.3d 915, 917 (8th Cir. 2007) (citing Saucier v. Katz, 533 U.S.  194, 201 (2001); Schatz Family ex rel.  Schatz v. Gierer, 346 F.3d 1157, 1160 (8th Cir. 2003)).

Analyzing a claim of qualified immunity requires a two-step inquiry.  Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012).  In one step, the deciding court determines whether the facts demonstrate a deprivation of a constitutional right.  Id.  (citing Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010)).   In the other, the court determines whether the implicated right was clearly established at the time of the deprivation.  Id.  (citing Parrish, 594 F.3d at 1001).  In considering those steps at the summary judgment phase, a district court is required to view the genuinely disputed facts in the light most favorable to the non-moving party, provided the record does not so contradict the facts as to render so viewing them unacceptable to any reasonable juror.  O'Neil, 496 F.3d at 917.

As discussed above, I do not believe the facts, viewed in the light most favorable to the Plaintiff, establish the existence of any violation of Plaintiff's constitutional rights.  There is no suggestion that the Defendant read the legal materials.  Plaintiff testified that the Defendant may not have even been aware that there was something in one of the envelopes.  Plaintiff also testified

-13-

that the extra envelopes may have been considered contraband by the Defendant.  Further, even if there was a question of fact as to whether Defendant's conduct violated Plaintiff's constitutional rights, for the reasons stated above, it was not clearly established that the inspection of legal materials during a shakedown violates the inmate's clearly established constitutional rights.

### 4.  Conclusion

For the reasons stated, I recommend that Defendant's motion for summary judgment (Doc. 41) be **GRANTED and the case DISMISSED WITH PREJUDICE.**  I further recommend that Plaintiff's motion for summary judgment (Doc. 36) be **DENIED.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of June 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)