IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**CHRISTOPHER GEORGE KNOX**                                                      **PLAINTIFF**

**V.**                                    **CASE NO. 5:15-CV-5035**

**DEPUTY MIKE LIVERMORE**                                                      **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R & R") (Doc. 57) by the Honorable Erin L. Setser, United States Magistrate Judge for the Western District of Arkansas, recommending that this Court deny Plaintiff Christopher George Knox's Motion for Summary Judgment (Doc. 36), grant Defendant Deputy Mike Livermore's Motion for Summary Judgment (Doc. 41), and dismiss Mr. Knox's case with prejudice. Mr. Knox has filed Objections (Doc. 61) to the R & R, prompting this Court to conduct a *de novo* review of the record in this case. Having completed its review of Mr. Knox's Objections and the record, the Court now sustains one of Mr. Knox's Objections, declines to adopt the R & R, denies Mr. Knox's Motion, and grants in part and denies in part Deputy Livermore's Motion, as described in further detail below.

### I. BACKGROUND

On January 7, 2015, Mr. Knox filed a civil rights lawsuit in federal court against the Washington County Sheriff's Office and others, complaining about the conditions of his confinement as an inmate at the Washington County Detention Center ("WCDC"). *See Knox v. Bradley et al.*, Case No. 5:15-cv-5006, (Doc. 1), (W.D. Ark. Jan. 7, 2015). That case is still pending. On January 25, 2015, a "shakedown" was conducted at the WCDC,

1

during which inmates' cells were searched for contraband while the inmates were removed from the area. During that shakedown, Deputy Livermore threw away some envelopes he found in Mr. Knox's cell that he says he believed had been hoarded in excess of what inmates were permitted to keep. After returning to his cell, Mr. Knox discovered that two pages of personal notes that he had compiled to aid himself in litigating his case had been thrown out with the excess envelopes; the notes had been stored inside one of those envelopes. After unsuccessfully going through the Detention Center's internal grievance process to try and retrieve his notes, Mr. Knox filed the instant lawsuit, claiming that the removal and destruction of his notes violated his constitutional rights.

Mr. Knox and Deputy Livermore filed cross-motions for summary judgment in late 2015, and after initial briefing, a hearing, and further supplemental briefing were all conducted, Magistrate Judge Setser submitted her R & R on these motions in June of 2016. In her R & R, Judge Setser found that: (1) the search of Mr. Knox's cell did not violate his Fourth Amendment rights because prisoners have no legitimate expectation of privacy in their cells, *see Hudson v. Palmer*, 468 U.S. 517, 529–30 (1984); (2) Mr. Knox's Sixth Amendment right to counsel was not infringed, as that Amendment applies only to criminal—not civil—matters, *see Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); (3) Mr. Knox's First Amendment right to send and receive legal mail, *see Hudson*, 468 U.S. at 547, was not infringed because no legal mail was actually impeded and there was no evidence that Deputy Livermore actually read Mr. Knox's notes outside Mr. Knox's presence, *see Wolff*, 418 U.S. at 577; (4) Mr. Knox was not unconstitutionally deprived of his property because the state of Arkansas provides an adequate post-deprivation

remedy, *Hudson*, 468 U.S. at 536, in the form of an action for conversion, *see, e.g.*, *Elliott v. Hurst*, 307 Ark. 134 (1991); and (5) Mr. Knox was not deprived of his constitutional right of access to the courts, because his ability to litigate his conditions-of-confinement case was not prejudiced by the loss of his notes, and because there was no evidence that Deputy Livermore intended to restrict Mr. Knox's access to the courts.  Since the R & R found no constitutional violation had occurred, it found further that Deputy Livermore could not be liable, officially or personally, for the loss or destruction of Mr. Knox's legal notes.  Accordingly, the R & R recommended denying Mr. Knox's Motion for Summary Judgment, granting Deputy Livermore's Motion for Summary Judgment, and dismissing Mr. Knox's case with prejudice.

Mr. Knox filed objections to the R & R in a document containing sixteen numbered paragraphs. (Doc. 61).  Four of these paragraphs do not contain any true objections, but rather simply recount procedural history, recite applicable legal standards, offer prayers for relief, *et cetera*.  See *id.* at ¶¶ 1, 4, 15–16.  The other twelve paragraphs contain objections that can be categorically summarized as follows: (1) Mr. Knox believes Deputy Livermore might have read Mr. Knox's legal mail outside of Mr. Knox's presence and intentionally destroyed it, *see id.* at ¶¶ 3, 5–9, 12; (2) the WCDC has an official policy permitting its employees to search inmates' legal mail for contraband outside those inmates' presence, *see id.* at ¶ 11; (3) Deputy Livermore's testimony in his affidavit lacks credibility because it conflicts with certain responses he previously gave to Mr. Knox's interrogatories, *see id.* at ¶¶ 2–3, 5, 8, 14; (4) before issuing her R & R, Magistrate Judge Setser made statements at the hearing that were favorable or sympathetic to Mr. Knox, *see id.* at ¶¶ 8, 13; and (5) Mr. Knox does not have an adequate post-deprivation remedy

for the loss of his legal notes, *see id.* at ¶ 10. Thusly sequenced, this Opinion and Order will discuss each of these five categorical objections in Section III after reciting the appropriate legal standard in Section II.

## II. LEGAL STANDARD

As mentioned above, this Court's review of Magistrate Judge Setser's R & R is *de novo*. *See Branch v. Martin*, 886 F.2d 1043, 1045–46 (8th Cir. 1989). A party moving for summary judgment must establish both the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir. 1999). The same standard applies where, as here, the parties have filed cross-motions for summary judgment. When there exists no genuine issue as to any material fact, "summary judgment is a useful tool whereby needless trials may be avoided, and it should not be withheld in an appropriate case." *United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978). Each motion should be reviewed in its own right, however, with each non-moving party "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record," with respect to the particular motion being opposed by that party. *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); *see also Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1998). In ruling on a motion for summary judgment, the Court "should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter," but rather should simply determine "whether a reasonable jury could return a verdict for the nonmoving party

based on the evidence." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

### III. DISCUSSION

The Court begins its discussion of Mr. Knox's Objections by observing that none of them appear to contest the R & R's finding that Mr. Knox's Sixth Amendment rights were not violated. Additionally, Mr. Knox does not appear to contest the R & R's finding that his Fourth Amendment rights were not violated, except insofar as he contends that his legal mail was read without a warrant. *See* Doc. 61, ¶ 6. As explained in the following paragraph, there is no genuine dispute that Deputy Livermore did not read Mr. Knox's legal mail. The Court agrees with the R & R's findings on Mr. Knox's claims under the Fourth and Sixth Amendments, as well with the R & R's reasons for those findings, and does not believe any further elaboration on those points is necessary here. Therefore, to the extent that Mr. Knox is claiming that his rights were violated under the Fourth or Six Amendments, those claims will be dismissed with prejudice.

Taking up Mr. Knox's first objection that Deputy Livermore might have read Mr. Knox's legal mail outside of Mr. Knox's presence and intentionally destroyed it: the pertinent question for the Court is whether there is *evidence* in the record—not mere speculation—that this happened, and this Court is unable to find any. The Court has viewed the video recording of Deputy Livermore's search through Mr. Knox's belongings (Doc. 47); although there are moments when Deputy Livermore can clearly be seen handling one or more manila envelopes belonging to Mr. Knox, the Court did not see any instances when Deputy Livermore appeared to be reading the contents of any documents enclosed therein. Deputy Livermore, on the other hand, has provided evidence—in the

5

form of testimony through his affidavit—that he did *not* read Mr. Knox's legal documents. (Doc. 55-2, ¶¶ 5, 8). The evidence in the record does not permit any genuine dispute as to this material fact, and therefore summary judgment in favor of Deputy Livermore is appropriate on Mr. Knox's claim that his legal documents were *read* outside his presence in violation of the First Amendment. And since there is no genuine dispute that Deputy Livermore did not read Mr. Knox's legal mail, Mr. Knox's second objection concerning whether Deputy Livermore read his legal mail pursuant to a WCDC official policy is moot.

Mr. Knox's third and fourth objections are also easily overruled. Mr. Knox argues that the Magistrate Judge should have disregarded Deputy Livermore's testimony in his affidavit because it lacked credibility. However, as noted above, the legal standard that applies to summary judgment motions prohibits such credibility determinations. *See, e.g.*, *White v. Farrier*, 849 F.2d 322, 326 (8th Cir. 1988) ("In rejecting Dr. Loeffelholz' opinion, the magistrate made a credibility determination that is inappropriate in ruling on a motion for summary judgment."). And although Mr. Knox argues that the Magistrate Judge's R & R is inconsistent with previous statements she made during the hearing that were more favorable to Mr. Knox's position, this is ultimately irrelevant; it is perfectly normal for different rulings in the same case to favor different parties, depending on the different issues at play, and it is perfectly reasonable for a judge's perspective on a particular issue or case to evolve as that judge becomes more informed by the law and the facts. At any rate, the Court has carefully listened to the audio recording of the hearing, and did not hear any rulings or orders therein that are inconsistent with the R & R.

A more difficult issue is posed by Mr. Knox's fifth and final objection—that he lacks an adequate post-deprivation remedy for the taking and destruction of his legal notes. It

is true, as the R & R observed, that the United States Supreme Court has held that "an unauthorized . . . deprivation of property by a state employee does not constitute a violation of . . . the Fourteenth Amendment if a *meaningful* postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (emphasis added). And the R & R is likewise correct that the state of Arkansas recognizes a cause of action for conversion where "any distinct act of dominion [is] wrongfully exerted over property in denial of, or inconsistent with, the owner's right." *Elliott v. Hurst*, 307 Ark. 134, 138 (1991).

But note this Court's emphasis on the word "meaningful" above. In Arkansas, "[t]he proper measure of damages for conversion of property is the market value of the property at the time and place of the conversion." *Id.* at 140. Based on the evidence currently before it, this Court cannot imagine that the "market value" of Mr. Knox's legal notes would have been anything more than nominal, so the proper inquiry here is whether a recovery of $1.00 would be a "meaningful" post-deprivation remedy for the harm that Mr. Knox suffered by the destruction of his legal notes. Naturally, the answer to that inquiry turns on how much—and what type of—harm Mr. Knox suffered from this deprivation. This Court does not understand the essence of Mr. Knox's alleged harm here to be the mere conversion of notebook paper and scribblings; rather, he is alleging that the destruction of his *legal notes* for his prior lawsuit has impeded his *access to the courts*.[1]

Inmates have a constitutional right of access to the courts that guarantees their ability to file lawsuits challenging the conditions of their confinement. *See Lewis v. Casey*,

---

[1] With that said, to whatever extent Mr. Knox is also asserting a run-of-the-mill claim under the Fourteenth Amendment for unlawful deprivation of personal property, that claim will be dismissed with prejudice because an action for conversion is an adequate post-deprivation remedy.

7

518 U.S. 343, 355 (1996). However, an inmate alleging that his right of access to the courts has been violated "must show actual injury." *Lewis*, 518 U.S. at 349. And the right of access "does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'" *Cody v. Weber*, 256 F.3d 764, 767–68 (8th Cir. 2001) (quoting *Lewis*, 518 U.S. at 354–55). But while it is one thing for a court to invoke this limitation on the right of access in the face of an inmate's claim that his prison's law library should be more voluminous, *see, e.g.*, *Lewis*, 518 U.S. at 354, it is a very different matter when the harm being alleged is the active and intentional interference with an inmate's attempts to file or prepare legal documents, *see id.* at 350. "The taking of legal papers will often (though perhaps not always) interfere with an inmate's right of access to the courts." *Goff v. Nix*, 113 F.3d 887, 892 (8th Cir. 1997). Put another way, "the destruction or withholding of inmates' legal papers burdens a constitutional right, and can only be justified if it is reasonably related to a legitimate penological interest." *Goff*, 113 F.3d at 892. This must be so, for it would be a very bizarre and dead-letter constitutional rule that forbids prison officials from *opening* inmates' legal mail outside their presence, *Cody v. Weber*, 256 F.3d at 768 ("mail from an attorney to an inmate client cannot be opened for inspection outside the inmate's presence"), while permitting prison officials to intentionally *destroy* inmates' legal documents for no good reason so long as the prison officials take care not to read them first.

Viewing the record in the light most favorable to Mr. Knox for purposes of Deputy Livermore's summary-judgment motion, the record shows a genuine dispute of material fact as to whether Mr. Knox suffered actual injury as a result of the destruction of his legal papers by Deputy Livermore. Specifically, Mr. Knox has testified his "case file" was

destroyed—including the only copy in existence of his notes on the facts which gave rise to his prior conditions-of-confinement lawsuit—while Deputy Livermore has provided no evidence that this deprivation was reasonably related to any legitimate penological interest.  Certainly the WCDC has a legitimate interest in conducting unannounced shakedowns of an inmate's cell, outside of that inmate's presence, in order to search for contraband.  But Deputy Livermore has not even attempted to articulate any legitimate penological interest that he or the WCDC had in *destroying Mr. Knox's legal papers* during the shakedown; instead, Deputy Livermore has simply claimed that he did not realize he was throwing away legal papers at the time he did so.  (Doc. 55-2, ¶ 8).  On this issue, too, of whether Deputy Livermore intentionally destroyed Mr. Knox's legal papers, the Court finds a genuine dispute of material fact—no matter whether the record is viewed in the light most favorable to Mr. Knox or to Deputy Livermore (bearing in mind that both parties filed motions for summary judgment).  Deputy Livermore has provided evidence that he did *not* act intentionally, through testimony in his affidavit as to his state of mind.  *Id.*  But Mr. Knox has provided evidence that Deputy Livermore *did* act intentionally, through testimony at the hearing that his legal papers had been stored inside a large manila envelope that was clearly marked as legal mail—a circumstance from which a fact-finder could very reasonably infer intent to destroy legal documents on the part of Deputy Livermore.[2]

---

[2] In order to prevail on his claim in this particular case, Mr. Knox must show that Deputy Livermore acted with the intention of impeding his access to the courts.  But the Court is not certain whether that would necessarily be the rule in *all* right-of-access cases.  It is certainly the rule that intent must be proven when such claims are brought under the First Amendment, *see, e.g.*, *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 830 (8th Cir. 2005), and as a general matter mere negligence is not enough for recovery under the Due Process Clause of the Fourteenth Amendment, *see Daniels v. Williams*, 474 U.S.

The Court turns then to the issue of whether Mr. Knox may proceed to trial on this claim against Deputy Livermore in his individual or official capacities. Deputy Livermore argues that he is entitled to qualified immunity from Mr. Knox's claim against him in his individual capacity. To determine whether Deputy Livermore is entitled to qualified immunity, this Court must conduct a two-step inquiry: (1) whether the facts, viewed in the light most favorable to Mr. Knox, show that Deputy Livermore deprived him of a constitutional right, and (2) whether that right was clearly established at the time of the deprivation. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). The Court has just explained in the preceding paragraph that the record sets forth a genuine factual dispute as to whether Deputy Livermore intentionally destroyed Mr. Knox's legal documents with no legitimate penological interest in doing so. And as should be clear from this Court's citation to Eighth Circuit case law above, the right of inmates not to have their legal papers intentionally destroyed absent a legitimate penological reason for doing so was clearly established long before the incident giving rise to this lawsuit occurred, going at least as far back to Chief Judge Richard Arnold's explicit articulation of it in *Goff v. Nix*, 113 F.3d 887, 892 (8th Cir. 1997). Therefore, Deputy Livermore is not entitled to qualified immunity unless and until this material factual dispute is resolved in his favor at trial. *Cf. Franklin*

---

327, 328 (1986). But the right of access to the Courts, while existentially well-settled, has a very "unsettled" textual basis in the Constitution; "[d]ecisions of [the United States Supreme Court] have grounded the right of access to courts in the Article VI Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses." *Christopher v. Harbury*, 536 U.S. 403, 415 & n.12 (2002) (internal citations omitted). And the specific contours of a constitutional right may be shaped by the particular constitutional clause under which it arises. *See Daniels*, 474 U.S. at 329–30. However, the Court is satisfied that the facts surrounding Mr. Knox's particular right-of-access claim only implicate his rights under the First Amendment Petition Clause and the Fourteenth Amendment Due Process Clause.

*v. Young*, 790 F.3d 865, 867 (8th Cir. 2015) ("[A] district court's summary judgment order denying qualified immunity may not be appealed insofar as it determines whether or not the pretrial record sets forth a genuine issue of fact for trial." (internal quotation marks and alterations omitted)).

Deputy Livermore also argues that he cannot be held liable in his official capacity. Or to put the matter more plainly, he argues that Washington County cannot be liable for his actions here, because he was not acting pursuant to any unconstitutional official policy or custom of WCDC. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997) ("[The United States Supreme Court has] required a plaintiff seeking to impose liability on a municipality under [42 U.S.C.] § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."). On this, the Court agrees with Deputy Livermore. The WCDC Detainee Handbook explicitly permits inmates to possess "[r]equired legal material," (Doc. 43-3), and Mr. Knox has not provided any evidence that there is "a continuing, widespread, persistent pattern" at WCDC of destroying or withholding inmates' legal material, intentionally or otherwise, absent a legitimate penological interest in doing so. *Jenkins v. Cnty. of Hennepin*, 557 F.3d 628, 634 (8th Cir. 2009). Because there is no genuine factual dispute that WCDC has no unconstitutional official policy or custom on this matter, Deputy Livermore is entitled to summary judgment on Mr. Knox's official-capacity claim against him.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Christopher George Knox's Objections (Doc. 61) are **OVERRULED IN PART AND SUSTAINED IN PART**, and the Court **DECLINES TO ADOPT** the Report and Recommendation (Doc. 57) as follows:

- Mr. Knox's Motion for Summary Judgment (Doc. 36) is **DENIED**; and

- Defendant Deputy Mike Livermore's Motion for Summary Judgment (Doc. 41) is **DENIED** as to Mr. Knox's claim against Deputy Livermore in his individual capacity for unconstitutional deprivation of his right of access to the Courts, and **GRANTED** as to all of Mr. Knox's other claims, which are **DISMISSED WITH PREJUDICE**.

With regard to Mr. Knox's remaining right-of-access claim against Deputy Livermore in his individual capacity, a trial date and related deadlines will be set by separate scheduling order.

**IT IS SO ORDERED** on this 23rd day of September, 2016.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE